**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



This opinion was filed for record at 8:00 AM on Dec 11 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

In the Matter of the Personal ) 
Restraint of ) No. 89693-3
 )
ROLAND ARTHUR SPEIGHT, )
 )
 Petitioner. )
 )  Filed _____ DEC 1 1 2014 _____

C. JOHNSON, J.—Petitioner Ronald Speight filed a timely personal restraint petition, claiming for the first time on collateral review that his right to a public trial under article I, section 22 of the Washington State Constitution, was violated when the trial court decided motions in limine and individually questioned potential jurors in chambers.[1] While Speight's public trial right claim has merit, his petition must be denied. Consistent with our holding in *In re Personal Restraint of Coggin*, No. 89694-1 (Wash. Dec. 11, 2014), a petitioner claiming a public trial

---

[1] This case was certified to this court by Division One of the Court of Appeals with *In re Personal Restraint of Coggin*, No. 89694-1 (Wash. Dec. 11, 2014). Both cases present the same central issue but were not consolidated.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Speight,* No. 89693-3

right violation for the first time on collateral review must show actual and substantial prejudice. Speight cannot show actual and substantial prejudice arising from the closure; therefore, his petition is denied.

FACTS AND PROCEDURAL HISTORY

On December 3, 2004, Speight drove Kelly Nixon to an inn where Speight was performing routine maintenance as a caretaker. While at the inn, Speight forced Nixon into oral and vaginal intercourse, resulting in torn clothing and injuries to Nixon's face and leg.

Speight was charged with second degree rape in San Juan County. At the beginning of jury selection, the judge had jurors fill out questionnaires regarding any experiences they may have had with a sexual offense. While the jurors were filling out these questionnaires, the trial judge, counsel, the clerk, the sheriff's deputy, and the court reporter went into the judge's chambers for motions in limine. Then, in response to the juror's answers to the questionnaires, 14 prospective jurors were questioned in chambers without the court engaging in the analysis required by *State v. Bone-Club,* 128 Wn.2d 254, 906 P.2d 325 (1995). Several prospective jurors were then excused or dismissed for cause.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Speight*, No. 89693-3

Speight was convicted of second degree rape, and in 2006, the Court of Appeals affirmed his convictions in an unpublished opinion.[2] Speight filed a timely personal restraint petition in 2007, arguing that his right to a public trial was violated during the in-chambers conference regarding the motions in limine and the individual questioning of jurors.[3] Division One stayed the petition multiple times, pending decisions by this court. Division One of the Court of Appeals then certified the case to this court in December 2013, alongside *Coggin*.

ANALYSIS

Speight claims that he was denied his constitutional public trial right during pretrial in-limine rulings and the jury selection process. A criminal defendant has a right to a public trial as guaranteed by our state and federal constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (providing "the accused shall have the right . . . to have a speedy public trial"); *State v. Paumier*, 176 Wn.2d 29, 34, 288 P.3d 1126 (2012).

---

[2] *State v. Speight*, noted at 136 Wn. App. 1006 (2006).

[3] In his opening brief, Speight asserts that his article I, section 22 rights to a public trial and the public and press's article I, section 10 rights to a public trial were violated. WASH. CONST. art. I, §§ 10, 22. However, Speight does not further analyze whether the public's right was violated during the individual questioning of jurors or when the motions in limine were decided in chambers. Therefore, we will analyze only the public trial right issue under article I, section 22.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Speight*, No. 89693-3

We have repeatedly held that the public trial right applies to jury selection. Specifically, it is well established that the public trial right in voir dire proceedings extends to the questioning of individual prospective jurors. *State v. Wise*, 176 Wn.2d 1, 16-19, 288 P.3d 1113 (2012). While the right to a public trial is not absolute, the trial court here did not conduct the analysis required by *Bone-Club* either implicitly or explicitly and therefore, the closure violated the defendant's right to a public trial. The State argues that the closure satisfies the five factors required by *Bone-Club*, but "[a] trial court is required to consider the *Bone-Club* factors *before* closing a trial proceeding that should be public." *Wise,* 176 Wn.2d at 12 (citing *Bone-Club*, 128 Wn.2d at 261). From the record, the trial court did not consider any of these factors in its decision whether to question individual jurors in chambers. Moreover, a trial court should "'resist a closure motion except under the most unusual circumstances.'" *Wise,* 176 Wn.2d at 11 (quoting *Bone-Club,* 128 Wn.2d at 259). Here, the defendant's constitutional right to a public trial was violated.

We have not yet addressed whether a closure occurs when a trial judge discusses and rules on motions in limine in chambers. This court uses the experience and logic test to evaluate whether a particular proceeding implicates the public trial right. *State v. Sublett,* 176 Wn.2d 58, 73, 292 P.3d 715 (2012). In *State*

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Speight,* No. 89693-3

*v. Smith,* 181 Wn.2d 508, 334 P.3d 1049 (2014), we alluded to the fact that evidentiary motions may not implicate the public trial right, but because sidebars, and not evidentiary conferences, were at issue in that case we did not decide definitively one way or the other. *See Smith,* 181 Wn.2d at 512 n.3 ("Although the parties disagreed about whether to characterize these hallway conferences as 'sidebars' or something else, we analyze them as sidebars here because that is the role these conferences played in the trial. The analysis would not change for on the record evidentiary conferences in chambers."). Since jurors were privately questioned, a closure occurred, and we need not decide whether a second closure exists in this case.

Because Speight's public trial right violation has merit, we must determine whether he must show that he was actually and substantially prejudiced by the violation. We addressed the issue—whether actual and substantial prejudice must be shown from a public trial right violation in order to obtain relief by personal restraint petition—in *Coggin.* Because the issue is identical and the facts are similar, we incorporate the reasoning from that case here. To summarize, generally, for a petitioner to prevail on collateral review, the petitioner must establish by a preponderance of the evidence that the constitutional error worked to his actual and substantial prejudice. *In re Pers. Restraint of St. Pierre,* 118 Wn.2d

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Speight,* No. 89693-3

321, 328, 823 P.2d 492 (1992). We carved out an exception to this general rule in *In re Personal Restraint of Morris,* 176 Wn.2d 157, 166, 288 P.3d 1140 (2012), where we held that we will presume prejudice for a petitioner who alleges a public trial right violation through an ineffective assistance of appellate counsel claim. But in *Coggin* we refused to extend this exception any further and held that our interest in finality required us to draw a line and not presume prejudice when a petitioner raises a public trial right violation for the first time on collateral review. *Coggin,* slip op. at 10. Therefore, in *Coggin* we held that a petitioner claiming a public trial right violation for the first time on collateral review must comply with the general rule for personal restraint petitions and show actual and substantial prejudice.

As a result, Speight can prevail only if he can show that the public trial right violation actually and substantially prejudiced him. Speight does not argue that he was actually and substantially prejudiced, nor do the facts suggest that he was. As a result of the individual questioning, he likely received a more fair trial and an impartial jury.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Speight*, No. 89693-3

CONCLUSION

The petition is denied.

_____

WE CONCUR:

_____     Wiggins, J.

_____     González, J.

_____     Kulik, J.P.T

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Speight (Roland Arthur)*

No. 89693-3

MADSEN, C.J. (concurring)—Like in the companion case, *In re Personal Restraint of Coggin*, No. 89694-1 (Wash. Dec. 11, 2014), I agree with the lead opinion's decision to deny Roland Speight's personal restraint petition, but for different reasons. First, I believe that this court must decide whether motions in limine implicate the public trial right, and I would decide this question in the negative. Second, I would hold that Mr. Speight invited the judge to conduct portions of voir dire in chambers. Thus, in contrast to the lead opinion and in line with my concurrence in *Coggin*, I believe we need not determine the prejudice showing required of personal restraint petitioners.

Nevertheless, because guidance is needed I would agree with the majority that the error here, failure to engage in the analysis outlined in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), requires a petitioner in a personal restraint petition to prove prejudice unless he can demonstrate that the error in his case "'infect[ed] the entire trial process'" and deprive the defendant of "'basic protections,'" without which "'no criminal

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

punishment may be regarded as fundamentally fair.'" *Neder v. United States*, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *Rose v. Clark*, 478 U.S. 570, 577, 578, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)).

Discussion

In contrast to the companion case, here the petitioner alleges two different public trial right violations. First, he challenges the trial court's decision to hear argument on motions in limine in chambers rather than in the courtroom, alleging that this behavior implicated his right to a public trial. While venire members were filling out questionnaires in the courtroom, the parties and the judge discussed motions in limine on the record in chambers. The State moved to bar the defendant from inquiring about the alleged victim's drug convictions. The defense brought several motions, including motions for the State to disclose certain information, to exclude mention of prior contact between the defendant and complainant, and to exclude mention of the defendant's mental disorder. In addition to challenging the judge's consideration of these motions in limine in chambers, Mr. Speight also makes an identical argument to William Coggin, namely that the in-chambers voir dire questioning of some venire members violated his public trial rights. In particular, the trial court conducted voir dire in chambers for 14 prospective jurors who had indicated a preference for private questioning on their written questionnaire.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In *State v. Smith*, this court outlined a three step inquiry to assess alleged public trial right violations. 181 Wn.2d 508, 513, 334 P.3d 1049 (2014) (citing *State v. Sublett*, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring)). We first consider whether the public trial right is even implicated and only then determine whether there was in fact a closure and, if so, whether that closure was justified. *Id.* The lead opinion acknowledges this framework but does not use it to evaluate the petitioner's motion in limine challenge. Lead opinion at 4-5. Instead, the lead opinion reasons that "[s]ince jurors were privately questioned, a closure occurred, and we need not decide whether a second closure exists in this case." Lead opinion at 5. I disagree with this analysis. The petitioner raises two separate public trial right violations, each of which must be separately analyzed. Before reaching the question of whether petitioners must prove prejudice for collateral challenges to public trial rights, this court should consider, first, whether the petitioner may be precluded from bringing the challenge due to invited error or affirmative waiver and, second, following the three step analysis, whether his public trial rights were violated.

Turning first to the motion in limine issue, I would hold that under the first prong of the *Smith* analysis, motions in limine do not implicate public trial rights. As the lead opinion recognizes, under *Smith*'s first step we use "the experience and logic test to evaluate whether a particular proceeding implicates the public trial right." Lead opinion at 4 (citing *Sublett*, 176 Wn.2d at 73).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"The first part of the test, the experience prong, asks 'whether the place and process have historically been open to the press and general public.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enter. Co. v. Superior Court* (*Press* II), 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). Motions in limine concern interlocutory pretrial decisions made by the trial court, typically involving legal questions about the admissibility of certain evidence. Often these pretrial decisions will be revisited during the course of proceedings as the evidence develops. As with rulings on contemporaneous objections to evidence, motions in limine are decided outside the hearing of the jury. *See* ER 103.

In *Smith*, this court applied the experience and logic test to hold that sidebar conferences involving evidentiary rulings on contemporaneous objections do not implicate the public trial right. *Smith*, slip op. at 6-14. There, we noted the history of conducting sidebars out of view of the public and the practical difficulties with removing jurors from a courtroom. *Id.* at 7-8. The reasoning in *Smith* applies here. During voir dire in Speight's case, the venire members were using the courtroom to fill out juror questionnaires before counsel began voir dire questioning in court. The trial judge used this downtime to discuss motions in limine in chambers rather than moving jurors in and out of the courtroom multiple times.

The second part of the test, the logic prong, asks "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press* II, 478 U.S. at 8). "The guiding principle [for the logic prong] is 'whether openness will enhance[] both the basic fairness of the criminal trial

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and the appearance of fairness so essential to public confidence in the system.'" *Smith*, slip op. at 6-7 (second alteration in original) (internal quotations omitted) (quoting *Sublett*, 176 Wn.2d at 75). For motions in limine, I believe the answer to these questions is no. In *Smith*, this court reasoned that sidebars do not "invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness." *Smith*, slip op. at 12. Specifically, we noted that the sidebars at issue were immediately recorded and made available to the public and emphasized the dense legal nature of the questions considered during such discussions. *Id.* at 12-13. The same reasoning applies in the motion in limine context. Here, the motions in limine considered in chambers were contemporaneously recorded verbatim. Thus, the public was not denied access to the proceedings. As with sidebars, the presence of the public would not have added anything to the discussion between the judge and counsel regarding questions of admissibility under the rules of evidence.

Applying the experience and logic test, I would hold that as long as these discussions occur on the record and concern primarily evidentiary matters, the public trial right does not attach.

Turning to petitioner's second public trial right allegation, I would hold that Mr. Speight invited the error of conducting voir dire interviews in chambers. As I outline in my concurrence in the companion case *Coggin*, in the voir dire context the key inquiry is whether the defendant "'actively participated'" in the conduct that led to the error. *Coggin*, slip op. (concurrence) at 2-3 (quoting *State v. Wise*, 176 Wn.2d 1, 15 n.8, 288

P.3d 1113 (2002)). In *State v. Momah*, we reasoned that invited error principles applied where defense counsel agreed beforehand to a juror questionnaire that permitted individual questioning, never objected to the proposal to conduct this questioning in chambers (presumably because the private questioning benefited his client), and actively participated in the questioning. 167 Wn.2d 140, 145-46, 153-56, 217 P.3d 321 (2009); *see also Wise*, 176 Wn.2d at 15 n.8 (reaffirming that defendants can invite public trial violations, pointing to factors outlined in *Momah*). Similarly, here defense counsel participated in a pretrial telephone conference between the parties and the judge where they discussed the creation of a juror questionnaire that would allow jurors to note a preference for private questioning. Defense counsel then participated in the questioning of the 14 jurors that occurred in chambers without raising any objection. Though the language of the questionnaire did suggest an "in court" private questioning experience to the potential jurors, the totality of the circumstances demonstrate that the in-chambers questioning was in line with defense counsel's expectations following the pretrial telephone call. Defense counsel did more than simply acquiesce to the trial court's decision to conduct questioning in chambers; he spoke with opposing counsel and the judge about the need for a mechanism for private voir dire questioning, agreed to the questionnaire proposed by the prosecutor, did not question the judge's decision to hold that private questioning in chambers, and in fact engaged in questioning the prospective jurors. By all accounts, defense counsel "actively participated" in the in chambers questioning of jurors and consequently invited the public trial error that resulted.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 89693-3
Madsen, C.J. concurring

In sum, I would address petitioner's motion in limine challenge but would hold that under our experience and logic test, motions in limine do not implicate public trial rights. I would also dismiss petitioner's challenge to the voir dire procedure on invited error grounds and thus would not reach the question of prejudice considered by the majority. I concur in the majority's decision to deny Mr. Speight's petition.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 89693-3

Madsen, C.J. concurring

_Madsen, C.J._

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Speight (Roland Arthur)*

No. 89693-3

STEPHENS, J. (dissenting)—This case turns largely on the same issue as *In re Personal Restraint of Coggin*, No. 89694-1 (Wash. Dec. 11, 2014): whether a personal restraint petitioner who suffered a violation of his right to a public trial should be denied a new trial when the petitioner does not also allege ineffective assistance of appellate counsel. I would hold that personal restraint petitioners should not have to make a special showing of prejudice beyond establishing the prejudice of structural public trial error. The reasoning and facts in both cases on this issue do not differ, so I incorporate the reasoning from my dissent in *Coggin* here. Because the lead opinion in both cases "requires personal restraint petitioners to prove the impossible, and because its holding erodes the promise of open justice in our courts, I respectfully dissent." Slip op. (dissent) at 2.

I also point out that because I would grant William Speight's personal restraint petition on the basis of the improper voir dire closure, it is unnecessary for me to consider whether the closed motion in limine hearing also warrants a new trial. The lead opinion does not have this luxury, though it practically ignores the motion in limine issue. Lead opinion at 4-5. Having determined that the closure of individual voir dire constituted a public trial violation, the lead opinion moves to the prejudice

issue and finds no prejudice. *Id.* at 5-6 (citing *Coggin*, slip op. at 10). It concludes that Speight was not actually and substantially prejudiced because "[a]s a result of the individual questioning, he likely received a more fair trial and an impartial jury." *Id.* at 6.

The individual questioning of jurors took place after the motions in limine were heard, so whatever prejudice might have occurred from the closed motion hearing would already have tainted the trial before voir dire began. Thus, the lead opinion needs to address the motions hearing, not only as to prejudice but as to whether the public trial right attaches to such a hearing. Its conclusion that the closed voir dire was not prejudicial because it likely benefited Speight is insufficient; how did the closed motion hearing work to his benefit?[1] The lead opinion's prejudice analysis is incomplete under its own post hoc analysis and provides no basis to dismiss this personal restraint petition in its entirety. *See Coggin*, slip op. (dissent) at 9 n.2 (explaining that the lead opinion's prejudice analysis constitutes a post hoc appellate *Bone-Club*[2] inquiry).

---

[1] The State claims that the motions in limine occurred in chambers because the venire was completing questionnaires in the courtroom. Resp. to Pers. Restraint Pet. at 4. So, it might be argued that the closure facilitated selecting an impartial jury because the closure shielded prospective jurors from exposure to potentially inadmissible evidence. This argument fails because the "purpose of a motion in limine is to dispose of legal matters so counsel will not be forced to make comments in the presence of the jury which might prejudice his presentation." *State v. Evans*, 96 Wn.2d 119, 123, 634 P.2d 845 (1981). The venire could have filled out questionnaires elsewhere while the court considered the motions in limine in open court. *See In re Pers. Restraint of Orange*, 152 Wn.2d 795, 810, 100 P.3d 291 (2004) (concerns stemming from "courtroom management and convenience" without consideration of the public trial right was insufficient to justify closure of voir dire).

[2] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For these reasons, I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Stephens, J.

Gordon McCloud, J.

Owens, J.

Fairhurst, J.