COURT OF APPEALS DIV I
STATE OF WASHINGTON

2015 SEP 28 AM 8: 50



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of: | ) ) ) | NO. 66055-1-I |
| | ) | DIVISION ONE |
| BRIAN CHAMPACO, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |
| | ) | FILED: September 28, 2015 |

LAU, J. — During Brian Champaco's trial for attempted first degree rape and first degree burglary with sexual motivation, the court sealed his competency evaluation and a defense expert's evaluation prepared during the exploration of a diminished capacity defense. Following his convictions on both counts and an unsuccessful direct appeal, Champaco filed this personal restraint petition. The acting chief judge dismissed all issues in the petition except one—"whether the sealing of Champaco's competency evaluations violated his right to a public trial and the public's right to open court records." Because Champaco invited any error regarding his right to a public trial, seeks relief that is not available on these facts, and does not demonstrate actual and substantial prejudice, we deny his petition.

## FACTS

Based on allegations that Champaco forced his way into a woman's apartment, demanded sex, and threatened her with a hammer, the State charged him with attempted first degree rape and first degree burglary with sexual motivation.

Prior to trial, Champaco received a competency evaluation at Western State Hospital. When he returned to court, the prosecutor and defense counsel agreed that he was competent to stand trial. After reviewing the evaluation from Western State, the court found Champaco competent and entered findings of fact and conclusions of law. The evaluation was not filed or sealed at that time.

Dr. David White subsequently evaluated Champaco to determine the feasibility of a diminished capacity defense. In his report, Dr. White concluded that Champaco was malingering and exaggerating his cognitive deficits. Defense counsel told the court that he would not be asserting a diminished capacity defense and that Dr. White would not be called as a witness at trial. The court then suggested that "for potential appellate review . . . I'm going to need a sealed statement from you as to what was involved with that exploration, what you found out . . . " Report of Proceedings (RP) (Sept. 12, 2007) at 5. The prosecutor stated she had "no objection to filing a copy of Dr. White's report under seal so it would be part of the record, but not open to the public." RP (Sept. 12, 2007) at 6.

During trial, the parties and the court discussed whether Champaco's evaluations should be sealed:

> [PROSECUTOR]: During pretrials we had talked - - [defense counsel] and I
> had talked, discussed with the Court filing the Western State evaluation with
> the defendant, as well as the defense expert's report, I have photocopied

those, and I have an order for the Court to seal those, to file under seal. [Defense counsel] has signed off on that and so I'd ask the Court [to] file these under seal.

THE COURT: Why do they need to be under seal?

[PROSECUTOR]: Sensitive psychological information about the defendant. It's personal information. We routinely seal the Western State reports. And I don't think [Dr. White's] report is any different, and I believe under the statute it's permissible to file these under seal under [RCW] 10.77.

[DEFENSE COUNSEL]: And we did talk about this pretrial on the first week. And your Honor was assuming that it was filed under seal already, but it had not been filed under seal, which is why we're providing the seal order.

[PROSECUTOR]: That's correct.

THE COURT: Under State vs Ish[i]kawa, if you file something under seal, I'm supposed to have a public hearing and opportunity for the press to appear. And the court, the superior court in general, has been getting some heat over the last couple of years from the newspapers, specifically the Seattle Times, for filing things under seal. So that's my only concern about filing it under seal.

[PROSECUTOR]: I can look up the statutory citation that authorizes the Court to do that and provide that to the Court. I can let the Court know that routinely what happens when somebody is found competent and the Court enters the findings of fact and conclusions of law, the report is filed at that time under seal with a specific statutory cite on the order to file it under seal. For whatever reason that just wasn't done in this case and that's why we're asking to do it now.

THE COURT: I need something on there to tell me this contains sensitive medical information.

[PROSECUTOR]: I can get that later today, Your Honor.

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: That would help.

RP (Sept. 27, 2007) at 4 (emphasis added). Later, the prosecutor told the court that "[RCW] 10.77.210 . . . directs that the defendant's mental health record shall remain private and not subject to public view." RP (Oct. 1, 2007) at 20. She then told the court "I have prepared an order that includes [the] statutory citation . . . that we would like to file under seal . . . . [Defense Counsel] has signed off on that order, your Honor." RP (Oct. 1, 2007) at 20 (emphasis added).

-3-

The jury convicted Champaco of attempted first degree child rape and first degree burglary with sexual motivation. Champaco appealed to this court and we affirmed.

In October 2010, Champaco filed this personal restraint petition arguing, among other things, that the trial court violated his right to a public trial and the public's right to open court records when it sealed his competency and expert evaluations without making the findings required by Seattle Times Co. v. Ishikawa, 97 Wn.2d 30, 36, 640 P.2d 716 (1982), and State v. Bone-Club, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). Following several stays, we requested supplemental briefing.

In November 2013, the Acting Chief Judge issued an order dismissing all issues in the petition except whether sealing Champaco's evaluations violated his right to a public trial and the public's right to open court records. We subsequently stayed the petition again pending the State Supreme Court's decisions in In re Coggin, 182 Wn.2d 115, 340 P.3d 810 (2014), and In re Speight, 182 Wn.2d 103, 340 P.3d 207 (2014). Following those decisions, we lifted the stay and obtained supplemental briefing regarding their effect on this case.

## ANALYSIS

The Washington and United States Constitutions guarantee the right of a criminal defendant to a public trial. WASH. CONST. art. I, section 22; U.S. CONST. amend. VI. Article I, section 10 of the Washington Constitution provides a similar right to the public, stating that "[j]ustice in all cases shall be administered openly." State v. Lormor, 172 Wn.2d 85, 91, 257 P.3d 624 (2011). These rights ensure that court proceedings and

court records, including competency evaluations, are presumptively open to the public.[1]

State v. Chen, 178 Wn.2d 350, 355-56, 309 P.3d 410 (2013). The presumption can be

overcome, and a court record sealed, only if the court finds that the factors discussed in

Ishikawa[2] favor sealing. Chen, 178 Wn.2d at 355. To obtain relief for a public trial

violation, a personal restraint petitioner must establish actual and substantial prejudice.

---

[1] These rights apply to both trial and pretrial proceedings. State v. Njonge, 181 Wn.2d 546, 553, 334 P.3d 1068 (2014).

[2] The Ishikawa factors are:

1. The proponent of closure and/or sealing must make some showing of the need therefor. In demonstrating that need, the movant should state the interests or rights which give rise to that need as specifically as possible without endangering those interests. . . . .

If closure and/or sealing is sought to further any right or interest besides the defendant's right to a fair trial, a "serious and imminent threat to some other important interest" must be shown.

. . . .

2. "Anyone present when the closure [and/or sealing] motion is made must be given an opportunity to object to the [suggested restriction]."

. . . .

3. The court, the proponents and the objectors should carefully analyze whether the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened. . . . If the endangered interests do not include the defendant's Sixth Amendment rights, that burden rests with the proponents.

4. "The court must weigh the competing interests of the defendant and the public", and consider the alternative methods suggested. Its consideration of these issues should be articulated in its findings and conclusions, which should be as specific as possible rather than conclusory. . . .

5. "The order must be no broader in its application or duration than necessary to serve its purpose . . . ." If the order involves sealing of records, it shall apply for a specific time period with a burden on the proponent to come before the court at a time specified to justify continued sealing.

Ishikawa, 97 Wn.2d at 37-39 (citations omitted). Ishikawa's five-factor standard was initially used in Article I, section 10 cases and later applied to Article I, section 22 cases in Bone-Club, 128 Wn.2d at 258-59.

In re Pers. Restraint of Coggin, 182 Wn.2d at 120-22; In re Pers. Restraint of Speight, 182 Wn.2d at 107.[3]

It is undisputed that Champaco's evaluations were court records and that the trial court failed to apply the Ishikawa factors before granting the parties' joint motion to seal them. The parties dispute, however, whether any errors arising from the sealing were invited, whether Champaco must demonstrate actual and substantial prejudice before he is entitled to relief, and what remedies are available on these facts.

### Article I, Section 22 / Defendant's Right to a Public Trial

The State contends Champaco invited any violation of his Article I, section 22 right to a public trial because the prosecution and defense jointly requested the sealing. Despite the State's arguments and the recent discussion of invited error in Coggin, Champaco does not address this issue in any of his filings. We conclude any error was invited.

Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal. In re Pers. Restraint of Copland, 176 Wn. App. 432, 442, 309 P.3d 626 (2013). "To determine whether the invited error doctrine is applicable to a case, we may consider whether the petitioner 'affirmatively assented to the error, materially contributed to it, or benefited from it.'" Copland, 176 Wn. App. at 442 (quoting State v. Momah, 167 Wn.2d 140, 154, 217 P.3d 321 (2009)). In this case, it is clear from the record that Champaco's trial counsel and the prosecutor jointly presented the

---

[3] Contrary to Champaco's assertions, a majority of the justices in Coggin and Speight agreed that a personal restraint petitioner must demonstrate actual and substantial prejudice to obtain relief for a public trial violation. In re Pers. Restraint of Schreiber, No. 40553-9-II (Wash. Ct. App. July 28, 2015).

sealing order.[4] Although the prosecutor took the lead in presenting the order, the record indicates that she spoke on behalf of defense counsel as well. It is also clear that Champaco benefitted from the sealing since the documents contained sensitive mental health information and suggested he was malingering. In these circumstances, Champaco invited any error concerning his personal right to a public trial. See Copland, 176 Wn. App. at 442-43 (where defense counsel initiated and participated in the closure, and the defendant benefitted from it, any error was invited); Coggin, 182 Wn.2d at 119 (petitioner did not invite error by "merely assenting to the State's juror questionnaire and where it was the trial judge who decided to question jurors in chambers").

Alternatively, even if Champaco had not invited the error, the sole remedy he seeks—a new trial—is unavailable in these circumstances. Both federal and Washington courts have held that a new trial is not always required for a public trial violation and that "'the remedy should be appropriate to the violation.'" State v. Rainey, 180 Wn. App. 830, 843 n.38, 327 P.3d 56 (2014) (quoting Waller v. Georgia, 467 U.S. 39, 50, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) and holding that violation of public trial right during posttrial hearing required remand for new posttrial hearing, not new trial).[5]

---

[4] In a declaration submitted with Champaco's personal restraint petition, Champaco's trial counsel states that "the judge asked to see a copy of the mental status evaluations of Mr. Champaco conducted by Western State Hospital and the psychologist who we retained. I provided copies to the judge under seal." (Emphasis added).

[5] See also Gibbons v. Savage, 555 F.3d 112, 120 (2d Cir.), cert. denied, 558 U.S. 932, (2009) ("It does not necessarily follow, however, that every deprivation in a category considered to be 'structural' constitutes a violation of the Constitution or requires reversal of the conviction, no matter how brief the deprivation or how trivial the proceedings that occurred during the period of deprivation."); Hoi Man Yung v. Walker,

No. 66055-1-I/8

In State v. Njonge, 181 Wn.2d 546, 554 n.3, 334 P.3d 1068 (2014), the Washington

Supreme Court stated:

> Where the error involves only the closure of a pretrial proceeding that can
> be repeated without any effect on the trial, a lesser remedy [than a new
> trial] may be appropriate. See Waller, 467 U.S. at 40 (directing new
> suppression hearing and noting, "A new trial need be held only if a new,
> public suppression hearing results in the suppression of material evidence
> not suppressed at the first trial or in some other material change in the
> positions of the parties.").

Accord State v. Wise, 176 Wn.2d 1, 19, 288 P.3d 1113 (2012). Thus, even if error, the

sealing of evaluations used in an uncontested pretrial ruling and the pretrial exploration

of an unasserted defense would not warrant a new trial. At most, they would warrant a

remand for reconsideration of the sealing decision following application of the Ishikawa

factors. The remedy Champaco seeks is unavailable on these facts.

Given this conclusion, we need not decide whether the actual and substantial

prejudice requirement announced in Coggin and Speight applies in this case.[6]

Regardless of whether the requirement applies, Champaco cannot obtain the relief he

seeks. We note, however, that to the extent the requirement applies, Champaco fails to

satisfy it. In fact, he does not even attempt to demonstrate such prejudice. This is not

surprising, since the sealing of evaluations used for an uncontested pretrial competency

determination and an unasserted defense simply could not have affected the outcome

of his trial. There is no showing of actual and substantial prejudice. See In re Pers.

---

468 F.3d 169, 177 (2nd Cir. 2006) ("new trial is not required to remedy a violation of the
public trial guarantee if some other relief would cure the violation"); Salem v. Yukins,
414 F. Supp. 2d 687 (E.D. Mich. 2006) (appropriate remedy for closing entrapment
hearing was a new entrapment hearing, not a new trial).

[6] Champaco contends the prejudice requirement either does not apply here or
applies only to violations of the state, as opposed to the federal, constitutional right to a
public trial.

-8-

Restraint of Schreiber, No. 40553-9-II (Wash. Ct. App. July 28, 2015); In re Stockwell, 160 Wn. App. 172, 180-81, 248 P.3d 576 (2011).

### Article I, Section 10 / Public's Right to Open Proceedings

Champaco also contends that sealing his evaluations violated the public's right to open proceedings under Article I, section 10. As noted above, once the evaluations became court records, they were subject "to the constitutional presumption of openness, which can be rebutted only when the court makes an individualized finding that the Ishikawa factors weigh in favor of sealing." Chen, 178 Wn.2d at 352. We conclude, however, that any violation of the public's Article I, section 10 rights is unavailing for several reasons.

First, Champaco's briefing on this issue is inadequate. He offers no argument or analysis concerning his standing to assert,[7] or the appropriate remedies for, a violation of the public's right. Our courts have declined to consider conclusory claims based on the public's right to open proceedings. See State v. Magnano, 181 Wn. App. 689, 693 n.1, 326 P.3d 845 (2014) (failure to provide "separate analysis, argument, or citation to

---

[7] Champaco arguably cannot assert the public's right to open proceedings because he invited the very closure he challenges on appeal. See generally State v. Herron, No. 89571-6, slip op. at 9, 12 (Wash. Aug. 20, 2015) (holding that Herron lacked standing "to assert the general public's right to the open administration of justice" and that his waiver of his own right to an open courtroom waived that right "for all purposes"); In re Det. of Reyes, 176 Wn. App. 821, 845-847, 315 P.3d 532 (2013), review granted, 182 Wn.2d 1001 (2015) ("If a litigant declines, perhaps for tactical reasons, to assert his own right to a public hearing, we do not see why he should be allowed to assert someone else's right to attend. This essentially gives a litigant the ability to try the case in his preferred manner (without public scrutiny) but obtain a new trial if things do not go in his favor. . . . We conclude that Mr. Reyes lacks standing to assert the right of others to have attended his hearing.").

authority regarding the public's right to an open trial."); Coggin, 182 Wn.2d at 117 n.3; Speight, 182 Wn.2d at 105 n.3.

Second, the sole remedy he seeks—a new trial—is unavailable for the alleged violation of the public's right to open proceedings. Such violations do not warrant a new trial absent a violation of the defendant's own right to a public trial. State v. Beskurt, 176 Wn.2d 441, 446, 293 P.3d 1159 (2013); State v. Halverson, 176 Wn. App. 972, 977, 309 p.3d 795 (2013) (citing Beskurt and stating "when an appellant seeks a new trial to remedy an alleged violation of public's article I, section 10 rights to open proceedings—without also demonstrating an article I section 22 violation of the defendant's public trial rights—the alleged error does not warrant a retrial."). Furthermore, for the reasons discussed in our resolution of Champaco's Article I, section 22 claim, a new trial is not a remedy "'appropriate to the violation.'" State v. Rainey, 180 Wn. App. 830, 843 n.38, 327 P.3d 56 (2014) (quoting Waller v. Georgia, 467 U.S. 39, 50, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)); State v. Njonge, 181 Wn.2d at 554 n.3.

And third, to the extent the actual and substantial prejudice standard applies here, Champaco fails to satisfy it.

The petition is denied.

_____

WE CONCUR:

_____

-10-