IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Personal Restraint Petition of: | ) | No. 25729-1-III |
| | ) | |
| JOHN E. MINES, Jr., | ) | |
| | ) | PUBLISHED OPINION |
| Petitioner. | ) | |

BROWN J. — In 2002, John Edward Mines, Jr. and two other men picked up a woman in their van. When the woman refused to perform sexually for Mr. Mines, she was violently raped, severely beaten, and strangled. Eventually, the men threw her out of the van in an isolated area. She crawled to a residence and reported the rape. The victim identified Mr. Mines in a police department photomontage. He was charged with first degree rape, second degree assault, and first degree kidnapping. A jury found him guilty as charged. His judgment and sentence was affirmed on discretionary review by the Washington Supreme Court. *See State v. Mines*, 163 Wn.2d 387, 179 P.3d 835 (2008). In this timely personal restraint petition, he contends (1) his public trial right was violated when certain potential jurors were interviewed privately, (2) the evidence was insufficient to show that he was armed with a deadly weapon when he committed the assault, and (3) his trial counsel was ineffective for failing to object to hearsay testimony.

FACTS

Late one night in November 2002, J.R. was walking home in Spokane after smoking cocaine and ingesting heroin.[1] A van containing three men stopped and asked if she would like a ride. She accepted and got into the back of the van with Mr. Mines. When Mr. Mines asked her to perform oral sex, she refused and asked to get out. She was then severely beaten, strangled, threatened with death, and raped in the vagina and anus with a plastic soda bottle and a screwdriver.

The State charged Mr. Mines with first degree rape, second degree assault, and first degree kidnapping. One of Mr. Mines' codefendants, Clinton Cramer, testified against him at trial. The jury found him guilty as charged. He was sentenced to an indeterminate life sentence under former RCW 9.94A.712 (2001) (sentencing for sexual offenses) with an exceptionally high minimum sentence based upon a finding of deliberate cruelty.

On appeal, this court remanded the case for resentencing pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), but later withdrew the opinion and stayed the case pending the decisions in *State v. Borboa*, 157 Wn.2d 108, 135 P.3d 469 (2006) and *State v. Clarke*, 156 Wn.2d 880, 134 P.3d 188 (2006) (holding that exceptional minimum sentences under RCW 9.94A.712 do not always violate

---

[1] The facts are taken from *Mines*, 163 Wn.2d at 389-92.

*Blakely*). *See State v. Mines*, unpublished opinion no. 21989-5-III (Wa. Ct. App. 2005) noted at 2005 WL 1705780. The Washington Supreme Court accepted discretionary review on the sufficiency of the evidence and affirmed his judgment and sentence.[2] *Mines*, 163 Wn.2d at 391-92. The mandate was issued on May 5, 2008.

Mr. Mines filed this pro se personal restraint petition in December 2006, while discretionary review in the Supreme Court was pending. In the timely original petition, he claimed insufficiency of the evidence to support second degree assault and ineffective assistance of trial counsel. This court stayed the matter pending the decision on his appeal. Through counsel, Mr. Mines filed a supplemental brief in April 2008, contending his public trial right was violated when the trial court conducted private voir dire of some potential jurors without first holding a hearing to consider the *Bone-Club* factors. *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). After the stay was lifted in May 2008, the State moved to stay the petition pending the decisions in *State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009), and *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009) (public trial rights cases). Mr. Mines agreed to the stay, which was granted in June 2008.

After the June 2008 stay was lifted on March 23, 2010, the State filed a response brief and Mr. Mines filed a reply. Then, in August 2010, the matter was again stayed

---

[2] Mr. Mines apparently abandoned the *Blakely* issue. *See Mines*, 163 Wn.2d at 391.

pending the mandate in *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012). This stay was lifted on January 11, 2013, and the parties filed supplemental briefing on the applicability of *Wise* as well as its companion cases: *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012) and *In re Personal Restraint of Morris*, 176 Wn.2d 157, 288 P.3d 1140 (2012). On March 4, 2013, the Acting Chief Judge of this court entered an order referring the personal restraint petition to a panel of judges for determination on the merits.

The case was set for oral argument on the June 13, 2013 docket. The proceedings were again stayed, however; this time pending the decision and mandate by the Washington Supreme Court in *In re Personal Restraint of Hartman*, no. 81225-0. After Mr. Hartman died and his case was closed, the stay on this case was lifted and immediately another stay was entered pending the decisions and mandates in *In re Personal Restraint of Speight*, no. 89693-3, and *In re Personal Restraint of Coggin*, no. 89694-1. These cases were decided and mandated and the stay was finally lifted on January 26, 2015. *See In re Pers. Restraint of Speight*, 182 Wn.2d 103, 340 P.3d 207 (2014); *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 340 P.3d 810 (2014).

Meanwhile, Mr. Mines obtained new counsel, who filed a motion to amend his petition on September 19, 2013. He asked this court "in the interests of justice" to allow him to include an ineffective assistance claim based on the previous attorneys' failure to raise the public trial issue on appeal or in the petition. Motion to Amend PRP at 1. The motion was referred to the panel for consideration with the petition. The parties have

4

submitted supplemental briefing on *Speight* and *Coggin* and to address the motion to amend the petition.

## STANDARDS OF REVIEW

Relief by way of a collateral challenge to a judgment and sentence is extraordinary. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). Generally, a personal restraint petition filed within one year after the judgment and sentence is final may challenge the conviction on any grounds, but must meet a high standard. *Id.* The petitioner must show with a preponderance of the evidence that he or she was actually and substantially prejudiced by a violation of constitutional rights, or that his or her trial suffered from a nonconstitutional defect that inherently resulted in a complete miscarriage of justice. *Id.*; *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 874, 16 P.3d 601 (2001). The petitioner may not renew an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). Washington courts have limited the relief considered in the "interests of justice" to cases where an intervening change in the law or some other circumstance justified the failure to raise a crucial argument on appeal. *Id.* A petitioner who renews an issue may not merely present different factual allegations or raise different legal arguments. *Id.*

ANALYSIS

A. Public Trial

The issue is whether Mr. Mines' constitutional right to a public trial was violated when some of the potential jurors were interviewed in a private jury room. He contends he is entitled to a new trial because the error is structural and therefore presumed prejudicial. In his untimely motion to supplement the petition he contends he had ineffective assistance of counsel because previous attorneys failed to raise the public trial issue on appeal and in his timely personal restraint petition.

The state and federal constitutions guarantee criminal defendants a right to a public trial. *See* WASH. CONST. art. I, § 22 (the "accused shall have the right . . . to have a speedy public trial") and U.S. CONST. amend. VI ("the accused shall enjoy the right to a speedy and public trial"); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804, 100 P.3d 291 (2005). Additionally, article I, section 10 of the Washington Constitution guarantees the public's open access to judicial proceedings ("[j]ustice in all cases shall be administered openly"). Violation of the public trial right is considered a structural error because it affects the framework within which the trial proceeds. *State v. Wise*, 176 Wn.2d at 5. As a result, violation of the public trial right is presumed prejudicial on direct appeal, even when the violation is not preserved by objection. *Id.* at 16. When a public trial violation is claimed for the first time in a personal restraint petition, however,

6

the petitioner generally must show actual and substantial prejudice. *In re Pers. Restraint of Coggin*, 182 Wn.2d at 116; *In re Pers. Restraint of Speight*, 182 Wn.2d at 107.

Although vital, the right to a public trial is not absolute. *Wise*, 179 Wn.2d at 9; *State v. Paumier*, 176 Wn.2d 29, 34-35, 288 P.3d 1126 (2012). A trial court may close a courtroom if it first balances the public trial right against competing rights and interests, using the five criteria established in *Bone-Club*, 128 Wn.2d at 258-59.[3] *Wise*, 176 Wn.2d at 10. As summarized in *Wise*, the *Bone-Club* criteria require the trial court, on the record, to at least (1) state the public trial right that will be lost by moving proceedings into a private room, (2) identify the compelling interest that motivates the closure, (3) weigh the competing rights, (4) give an opportunity to object, and (5) adopt the least restrictive alternative of closure. *Id.* Although a trial court may close all or part of a trial

---

[3] The *Bone-Club* factors include:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

4. The court must weigh the competing interests of the proponent of closure and the public.

5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-61 (alteration in original) (quoting *Allied Daily*

7

after considering the alternatives, it must "'resist a closure motion except under the most unusual circumstances.'" *Id.* at 11 (quoting *Bone-Club*, 128 Wn.2d at 259).

The public trial right extends to jury selection. *Wise*, 176 Wn.2d at 11. The right applies to the questioning of individual prospective jurors. *Id.* (citing *State v. Momah*, 167 Wn.2d 140, 151-52, 217 P.3d 321 (2009); *State v. Strode*, 167 Wn.2d 222, 227, 217 P.3d 310 (2009)).

Mr. Mines correctly argues the trial court did not consider the *Bone-Club* factors on the record when it decided to interview certain potential jurors in chambers. On the first day of jury voir dire, the trial judge gave the jury panel a questionnaire. After reviewing the questionnaire, the judge began holding proceedings in a closed jury room for individual voir dire of jurors who had stated they had some sort of experience with sexual abuse or sexual abuse cases. Mr. Mines, his attorney, the deputy prosecutor, and the judge were present. The trial judge began by stating to the first juror:

> [W]e are interviewing people who have answered yes to our questionnaire.
> I think you can tell, obviously, why. And we are doing it back here. Rather
> than have you do it in front of a large group of strangers, we will have you
> do it in front of a small group of strangers.

Report of Proceedings (RP) (Feb 10, 2003) at 5. Similar statements were made to each panel member interviewed. Then the trial judge conducted the interviews, asking each

---

*Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

potential juror to explain the circumstance involving sexual abuse or any other conflict. Defense counsel asked eight potential jurors follow-up questions.

As the record shows, the trial judge initiated the closed proceeding, never mentioned the public trial right, did not weigh competing rights or give an opportunity to object, and did not consider less restrictive alternatives. The judge apparently adopted the partial closure to protect the privacy of the jurors who had indicated possible conflicts and to promote candid answers to sensitive questions. Jury privacy is an interest that the trial court may consider when deciding whether to close part of a trial, but this privacy interest must be weighed against the defendant's and the public's right to an open trial. *Wise*, 176 Wn.2d at 10 n.3. In this case, the trial court did not weigh these interests. Because the partial closure occurred without a *Bone-Club* examination, Mr. Mines' article I, section 22 and Sixth Amendment public trial rights were violated.

The State urges this court to find that Mr. Mines essentially waived any error by participating in the private voir dire. A defendant may waive his or her right to a public trial if the waiver is knowingly, intelligently, and voluntarily given. *State v. Frawley*, 181 Wn.2d 452, 461-62, 334 P.3d 1022 (2014) (plurality opinion). Mr. Mines did not waive his right to a public trial by failing to object to the partial closure of voir dire. *Wise*, 176 Wn.2d at 15. The record does not show he knew he was waiving his right to a public trial, understood what the right entailed, and voluntarily agreed to waive that right.

9

*See State v. Shearer*, 181 Wn.2d 564, 575-76, 334 P.3d 1078 (2014) (plurality opinion; McCloud, J., concurring). Consequently, he did not waive his challenge.

As discussed, a petitioner on collateral review generally must show with a preponderance of the evidence that the constitutional error actually and substantially prejudiced him or her. *Speight*, 182 Wn.2d at 107. The sole exception to this requirement is found in *In re Personal Restraint of Morris*, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012), which holds that prejudice is presumed when the petitioner alleges his or her counsel was ineffective for failing to raise the public trial issue on appeal. *Speight*, 182 Wn.2d at 107.

Here, the trial judge erroneously closed the courtroom when he privately questioned individual potential jurors without first conducting a *Bone-Club* analysis. *See Coggin*, 182 Wn.2d at 118. But Mr. Mines fails to show he was actually and substantially prejudiced by the closure. According to Mr. Mines, he was surrounded by additional officers in the private jury room as a security measure. This increased police presence, he contends, eroded the presumption of innocence. He also asserts that his family members were unable to provide assistance and he was unable to consult with his attorney due to the restrictive nature of the police presence. On the other hand, the record shows the parties and the trial judge were concerned with juror bias because the case involved severe sexual violence. Individual questioning of the selected jurors encouraged more honest responses. Ultimately, Mr. Mines' conclusory allegations of the prejudicial

10

nature of the additional officers are insufficient to show actual and substantial prejudice. *See In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004) (the petitioner may not rely on conclusory allegations); *see also Holbrook v. Flynn*, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986) (increased police presence in a courtroom does not give rise to a presumption of inherent prejudice).

For the first time in supplemental briefing and a motion to amend the petition, Mr. Mines claims appellate counsel was ineffective for failing to raise the public trial issue on direct appeal. The motion to amend was filed in September 2013 and the supplemental briefing was filed in February 2015, several years after the mandate of his judgment and sentence on May 5, 2008. As discussed, a petitioner in a timely personal restraint petition who claims appellate counsel was ineffective for failing to raise a public trial violation on direct appeal is entitled to a presumption that the error was prejudicial and requires a new trial. *Speight*, 182 Wn.2d at 107; *Morris*, 176 Wn.2d at 166. Here, however, the claim is untimely. RCW 10.73.090(3)(b). [4]

---

[4] We recently vacated a petitioner's judgment and sentence and remanded for a new trial because the petitioner argued in a supplemental personal restraint petition that his appellate counsel was ineffective in failing to assert public trial violations during an appeal. *See State v. Fort*, ___ Wn. App. ___, noted at 2015 WL 5430243 *17 (Wa. Ct. App. 2015). Unlike the circumstances here, the *Fort* petitioner's supplemental brief was timely. Consequently, the *Fort* petitioner was entitled to the presumption that his appellate counsel's error was prejudicial. *Id.*; *Morris*, 176 Wn.2d at 166.

11

Mr. Mines argues his petition qualifies for an exception to the one-year time bar because a significant change in the law occurred material to his conviction that applies retroactively. RCW 10.73.100(6). He argues the *Morris* holding which presumes prejudice when the petitioner alleges his or her counsel was ineffective for failing to raise the public trial issue on appeal, is a significant change in applicable law. *See Morris*, 176 Wn.2d at 166. Mr. Mines argues *Morris* is significant because it refines and reaffirms *In re Personal Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004), which holds prejudice is presumed and a petitioner is entitled to relief on collateral review when appellate counsel fails to raise a public trial right violation.

Recently, the Washington Supreme Court in *In re Personal Restraint of Erhart*, 183 Wn.2d 144, 351 P.3d 137 (2015), addressed what constitutes a significant change in the law. Mr. Erhart did not raise a public trial issue on appeal and filed an untimely motion for discretionary review. Mr. Erhart argued his public trial claim fell within the RCW 10.73.100(6) exemption to the one-year time bar because *Wise*, 176 Wn.2d 1, was a significant change in the law that was material and retroactively applicable to his case. *Erhart*, 193 Wn.2d at 148. The *Wise* court, 176 Wn.2d at 6, held closure of voir dire without applying the *Bone-Club* factors was a structural error presumed prejudicial. Because *Wise* was firmly grounded in well-established precedent and did not overrule any previously controlling decision, the *Erhart* court held *Wise* was not a significant

change in the law.[5] *Erhart*, 183 Wn.2d at 148. *See also In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 351 P.3d 138 (2015) (a significant change in the law occurs when an opinion effectively overturns a prior appellate decision that was determinative of a material issue) (quoting *In re Pers. Restraint of Greening*, 141 Wn.2d 687, 697, 9 P.3d 206 (2000)).

Mr. Mines admits the decision in *Morris* is firmly grounded in the Washington Supreme Court's 2004 decision in *Orange*. The *Morris* court states appellate counsel "had but to look at this court's public trial jurisprudence to recognize" that closure of voir dire to the public without a *Bone-Club* analysis was a presumptively prejudicial error on direct appeal. *Morris*, 176 Wn.2d at 167. *Morris'* holding, 176 Wn.2d at 166—that prejudice is presumed when a petitioner successfully alleges a public trial violation through an ineffective assistance of appellate counsel claim—did not overrule any prior appellate decision and therefore was not a significant change in the law. Consequently, Mr. Mines' untimely attempt to amend his petition on the basis of *Morris* does not qualify for the exemption in RCW 10.73.100(6).

Mr. Mines next argues the one-year, time bar should be equitably tolled, citing *In re Personal Restraint of Haghighi*, 178 Wn.2d 435, 309 P.3d 459 (2013) and *In re*

---

[5] *Erhart*, 183 Wn.2d at 148, denied Mr. Erhart's untimely motion to amend his motion for discretionary review to add a claim of ineffective assistance of counsel. "Such a claim is time barred because it falls within neither RCW 10.73.090(1) nor RCW 10.73.100." *Id.*

*Personal Restraint of Bonds*, 165 Wn.2d 135, 196 P.3d 672 (2008). He claims his former appellate lawyer's failure to investigate the public trial issue and his former petition lawyer's failure to raise the ineffective assistance of counsel issue were extraordinary circumstances justifying equitable relief.

Equitable tolling "permits a court to allow an action to proceed when justice requires it, even though a statutory time period has elapsed." *Bonds*, 165 Wn.2d at 141. A petitioner who seeks to benefit from the equitable tolling doctrine must demonstrate that the petition or amended petition was untimely due to bad faith, deception, or false assurances. *Id.* at 141-42, 144. *See also Haghighi*, 178 Wn.2d at 448-49 ("Consistent with the narrowness of the doctrine's applicability, principles of finality, and the multiple avenues available for postconviction relief, we apply the civil standard [for equitable tolling] and require the predicates of bad faith, deception, or false assurances.").

Mr. Mines cites his appellate lawyer's failure to investigate the public trial issue as one of the circumstances supporting equitable tolling of the one-year time bar. Appellate counsel declared Mr. Mines wanted her to look into the public trial issue; she agreed to do so, but she did not. But appellate counsel's inaction, even if it constitutes a false assurance, did not affect Mr. Mines' ability to file a timely petition or amended petition addressing the public trial issue. He does not address how bad faith, deception, or false assurances caused his former lawyer to ignore the public trial issue in the timely-filed

14

personal restraint petition. The record does not indicate equitable tolling is justified under these circumstances. *Haghighi*, 178 Wn.2d at 448-49.

Given our analysis, we conclude although Mr. Mines shows a violation of his right to public trial, he fails to prove actual and substantial prejudice justifying relief. His claim of ineffective assistance of counsel was untimely filed in a motion to amend the petition; the motion is denied.

## B. Evidence Insufficiency

The issue is whether the evidence is sufficient to show Mr. Mines was armed with a deadly weapon when he committed second degree assault with a deadly weapon, RCW 9A.36.021(1)(c). This issue was addressed and rejected on its merits in the appeal and Mr. Mines offers no reasons why, in the interests of justice, it should be considered again here. *Mines*, 163 Wn.2d at 392; *see In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013) (reexamination of an issue decided in a prior appeal is limited to cases where an intervening change in the law or some other circumstance justified the failure to raise a crucial argument on appeal). Therefore, Mr. Mines does not show the evidence insufficiency issue should be reconsidered in the interests of justice.

## C. Ineffective Assistance of Counsel

The issue is whether trial counsel was ineffective in failing to object to hearsay testimony by Mr. Mines' codefendant, Mr. Cramer. During direct-examination, Mr. Cramer described what was happening in the back of the van involving the victim and

15

Mr. Mines. *See Mines*, 163 Wn.2d at 391. Defense counsel did not object to this testimony. Mr. Mines contends Mr. Cramer's testimony prejudiced the jury against him.

Denial of a defendant's right to effective assistance of counsel is an error of constitutional magnitude. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). To prove ineffective assistance of counsel, Mr. Mines must show with a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness and that this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Under the prejudice prong, he must show a reasonable probability that if counsel had not been deficient, the result of the trial would have been different. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 843, 280 P.3d 1102 (2012). Counsel is presumed to be effective, and Mr. Mines must show an absence of legitimate strategic reasons to support his counsel's challenged conduct. *McFarland*, 127 Wn.2d at 335; *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). Because he rests his claim of ineffective assistance of counsel on defense counsel's failure to object, he must show the trial court likely would have sustained an objection. *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

Hearsay is an out-of-court statement made by someone other than the testifying witness and offered for the truth of the matter asserted. ER 801(c). Under ER 801(d)(2)(v), the statement of a coconspirator made during the course of the conspiracy is

16

an exception to the rule that bars admission of hearsay evidence. Here, Mr. Cramer was a codefendant describing the statements of a coconspirator made during the course of the crime. The admission of these statements was proper under ER 801(d)(2)(v) and any objection to them would have been overruled. Thus, Mr. Mines fails to show his trial counsel's performance was deficient. *Strickland*, 466 U.S. at 687-88. Accordingly, Mr. Mines fails to show ineffective assistance of counsel.

Given our analysis, we dismiss Mr. Mines' petition, RAP 16.11(b), and deny his motion to amend the petition as untimely. RCW 10.73.090(1).

Brown, J.

WE CONCUR:

Siddoway, C.J.

Fearing, J.

17